**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION**

IN RE SUBPOENAS ISSUED TO PETER
ANGELOS LAW, P.C., IN *IN RE
BESTWALL LLC*, CASE NO. 3:17-BK-
31795-LTB, PENDING IN THE
BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF NORTH
CAROLINA.

Civil Case No. SAG-21-3257

**BESTWALL LLC'S OPPOSITION TO PETER ANGELOS LAW, P.C.'S
MOTION TO QUASH OR MODIFY BESTWALL LLC'S
<u>SUBPOENA DUCES TECUM AND SUBPOENA AD TESTIFICANDUM</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

    A.    The Subpoenas Relate to Estimation Proceeding in
          Bankruptcy Case ..................................................................................... 2

    B.    Plaintiffs' Failure to Admit and Disclose To Bestwall
          Exposures They Acknowledged Elsewhere ............................................. 3

    C.    The Subpoenas to Angelos ...................................................................... 7

ARGUMENT ......................................................................................................................... 10

  I.    The Subpoenas Were Properly Issued Under Civil Rule 45 Rather
      Than Bankruptcy Rule 2004 Because the Estimation Proceeding Is
      a Pending Contested Matter ...................................................................... 10

  II.    The Subpoenas Are Proper Under Civil Rules 26 and 45 ................................... 13

    A.    The Subpoenas do not implicate the heightened standard
          for discovery from opposing counsel, but, in any event, that
          standard is satisfied ................................................................................ 13

    B.    The Subpoenas do not seek any privileged or otherwise
          protected information ............................................................................. 15

        1.    Trust claims ................................................................................ 15

        2.    Bankruptcy filings ..................................................................... 18

        3.    Disclosures to and communications about
             alternative exposures with Bestwall during
             settlement negotiations ............................................................... 20

        4.    Dahlgren Article ......................................................................... 21

    C.    The Subpoenas do not pose an undue burden on Angelos ....................... 22

CONCLUSION ....................................................................................................................... 24

**TABLE OF CONTENTS**
(continued)

**Page**

CERTIFICATE OF SERVICE ................................................................................................. 24

INDEX OF EXHIBITS

# TABLE OF AUTHORITIES

**Page**

CASES

*Buyer's Direct Inc. v. Belk, Inc.*, No. 5:10-CV-65-H, 2012 WL 3278928 (E.D.N.C. Aug. 10, 2012) ............................................................................................................................ 14

*CTB, Inc. v. Hog Slat, Inc.*, No. 7:14-CV-157-D, 2016 WL 1244998 (E.D.N.C. Mar. 23, 2016) ............................................................................................................................ 14, 15

*Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215 (D. Neb. 2006) ...................................................................................................................... 14

*Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, No. 319CV00515KDBDSC, 2021 WL 5826786 (W.D.N.C. Dec. 8, 2021) ............................................................. 14

*Golik v. CBS Corp.*, 472 P.3d 778 (Or. Ct. App. 2020)............................................................ 3, 16

*Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2011 WL 2671230 (N.D.W. Va. July 7, 2011) ...................................................................................................................... 14

*In re Allergan, Inc*, No. 14CV02004DOCKES, 2016 WL 5922717 (C.D. Cal. Sept. 23, 2016) . 14

*In re Bestwall LLC*, 2021 WL 2209884 (D. Del. June 1, 2021) .................................................... 18

*In re Blackjewel, L.L.C.*, No. 3:19-BK-30289, 2020 WL 6948815 (Bankr. S.D.W. Va. July 14, 2020) ...................................................................................................................... 11

*In re Camferdam*, 597 B.R. 170 (Bankr. N.D. Fla. 2018) .......................................................... 12

*In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002) .......................................................... 12

*In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014) ........................ passim

*In re Mobley*, 580 B.R. 453 (Bankr. D.S.C. 2017) ...................................................................... 11

*In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281 (D. Del. 2013)............. 19

*In re Murray*, 620 B.R. 286 (Bankr. E.D. Mich. 2020) .............................................................. 12

*In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-RWZ, 2016 WL 11214564 (D. Mass. Mar. 8, 2016)............................................................. 16

*In re Patel*, No. 16-65074-LRC, 2017 WL 377943 (Bankr. N.D. Ga. 2017) ........................ 10, 12

*In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997)...................................................... 10, 11, 12

*In re Young*, No. 17-14065-NPO, 2018 WL 6060338 (Bankr. N.D. Miss. Nov. 19, 2018) ......... 12

*Kananian v. Lorillard Tobacco Co.*, No. CV-442750, 2007 WL 4913164 (Ohio Ct. Com. Pl. Jan. 17, 2007) ................................................................................................................................ 16

*Martino v. Kiewitt N.M. Corp.*, 600 F. Appx. 908 (5th Cir. 2015) ........................................ 20, 21

*Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.*, 2015 WL 4773425 (Bankr. W.D. Pa. Aug. 12, 2015) .................................................................................................................................... 7

*Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002) ............................................ 13

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) ..................................................... 13

*Thompson v. Better-Bilt Alum. Prods. Co.*, 832 P.2d 203 (Ariz. 1992) ........................................ 3

*Willis v. Buffalo Pumps, Inc.*, No. 12CV744-BTM DHB, 2014 WL 2458247 (S.D. Cal. June 2, 2014) .................................................................................................................................... 15

## STATUTES

11 U.S.C. § 502(c) ....................................................................................................................... 2

11 U.S.C. § 524(g) ....................................................................................................................... 1

11 U.S.C. § 524(g)(2)(B)(ii) ........................................................................................................ 5

76 Okla. Stat. Ann. §§ 81-89 ..................................................................................................... 16

Ala. Code § 6-5-690 to -694 ................................................................................................. 7, 16

Ariz. Rev. Stat. § 12-782 ...................................................................................................... 7, 16

Ga. Code Ann. § 51-14-7 ........................................................................................................... 16

Iowa Code §§ 686A.1-.9 ............................................................................................................ 16

Kan. Stat. §§ 60-4912 to -4918 ................................................................................................. 16

Mich. Code § 600.3010 to .3016 .......................................................................................... 7, 16

Miss. Code §§ 11-67-1 to -15 .................................................................................................... 16

N.C.G.S. §§ 1A-1, Rule 26(b)(2a); 8C-1, Rule 415; and 1-75.12 ............................................ 16

N.D. Cent. Code §§ 32-46.1-01 to -05 ...................................................................................... 16

Ohio Rev. Code Ann. §§ 2307.951-.954 ................................................................................... 16

S.D. Codified Laws §§ 21-66-1 to -11 ................................................................... 16

Tenn. Code §§ 29-34-601 to -609 ........................................................................ 16

Tex. Civ. Prac. & Rem. Code §§ 90.051-.058 ..................................................... 16

Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b) .................................................... 3

Tex. Civ. Prac. & Rem. Code Ann. § 33.013 .......................................................... 3

Utah Code §§ 78B-6-2001 to -2010 ..................................................................... 16

W. Va. Code Ann. § 55-7F-1 to -11 ..................................................................... 16

Wis. Stat. Ann. § 802.025. ................................................................................... 16

**RULES**

Fed. R. Bankr. P. 2004(a)-(b) .............................................................................. 10

**OTHER AUTHORITIES**

10 Collier on Bankruptcy ¶ 9016.01 (16th ed. 2021) ......................................... 11

9 Collier on Bankruptcy ¶ 2004.01 (16th ed. 2021) ........................................... 10

Collier on Bankruptcy ¶ 9016.01 (15th ed. rev. 1996) ........................................ 10

Dahlgren & Peckham, "Mesothelioma associated with use of drywall joint compound: a case series and review of literature," Int'l J. of Occ. and Env. Health (2012) ................................ 21

Daniel J. Ryan & John J. Hare, Uncloaking Bankruptcy Trust Filings in Asbestos Litigation: A Survey of Solutions to the Types of Conduct Exposed in Garlock's Bankruptcy, 15 Mealey's Asbestos Bankr. Rep. (Aug. 2015) ............................................................. 7

Fairness in Class Action Litigation and Furthering Asbestos Claims Transparency Act of 2016 (H.R. 1927, 114th Cong.) ................................................................. 7

Fed. R. Bankr. P. 9014 advisory committee's note ................................................ 10

Howard J. Steinberg, 1 Bankruptcy Litigation § 5:217 ......................................... 11

O'Brien, John, *Ky. Judge: Asbestos firm should have turned over trust claim evidence to defendants*, Legal Newsline (Aug. 5, 2015) ............................................. 16

Peggy Ableman et al., A Look Behind the Curtain: Public Release of Garlock Bankruptcy Discovery Confirms Widespread Pattern of Evidentiary Abuse Against Crane Co., 15 Mealey's Litig. Rep.: Asbestos (Nov. 2015) ............................................. 7

Peggy L. Ableman, A Case Study From a Judicial Perspective: How Fairness and Integrity in
 Asbestos Tort Litigation Can Be Undermined by Lack of Access to Bankruptcy Trust Claims,
 88 Tul. L. Rev. 1185 (2014) ........................................................................................... 4, 16

Problems with Asbestos Compensation System, Hr'g Before Subcomm. on the Const. of the
 Comm. on the Judiciary, House of Reps., 111th Cong. (Sept. 9, 2011), 2011 WLNR 24791123
 ............................................................................................................................................... 8

Bestwall LLC ("**Bestwall**"), the debtor in a chapter 11 case pending in the United States Bankruptcy Court for the Western District of North Carolina (the "**Bankruptcy Court**"), submits this opposition to *Peter Angelos Law, P.C.'s Motion to Quash or Modify Bestwall LLC's Subpoena Duces Tecum and Subpoena Ad Testificandum* (D.I. 4) (the "**Motion**").[1]

## INTRODUCTION

Bestwall is the successor to the asbestos liabilities of the former Georgia-Pacific LLC ("**Old GP**"), as a result of a corporate restructuring that took place in 2017 by which Bestwall was formed and Old GP ceased to exist.[2] Prior to 1978, Bestwall manufactured joint compound products that contained asbestos.[3] From the 1980s until 2017, Bestwall was sued in hundreds of thousands of cases in which plaintiffs alleged that those products caused their asbestos-related injuries, and tens of thousands of those claims remain pending against Bestwall.[4] Bestwall denies its joint compound caused any of these injuries.

On November 2, 2017, Bestwall filed its chapter 11 case, No. 17-BK-31795 (LTB) (Bankr. W.D.N.C.) (the "**Bankruptcy Case**") for the purpose of permanently and equitably resolving all current and future asbestos-related claims through creation of a trust to process and pay those claims under 11 U.S.C. § 524(g).[5] A core issue in the Bankruptcy Case is how to estimate or value Bestwall's liability for current and future asbestos claims in connection with funding an asbestos trust to pay them. Bestwall contends that those claims should be estimated through a merits-based analysis of Bestwall's legal liability, while representatives for current and

---

[1] This brief references filings on this Court's docket as "D.I." and the Bankruptcy Court's docket as "Bankr. D.I."
[2] *Informational Brief of Bestwall LLC* (Bankr. D.I. 12) ("**Informational Brief**") at 3.
[3] For ease of reference, in this brief, for events that occurred prior to the 2017 corporate restructuring, "Bestwall" refers to "Old GP." Joint compound is a product that is used to fill the seams between sheets of drywall in residential and commercial construction.
[4] Informational Brief at 1, 6.
[5] *Id.* at 8.

future asbestos claimants argue that extrapolating from historical settlement data is the more appropriate methodology.[6]

Through the subpoena *duces tecum* and subpoena *ad testificandum* that are the subject of the Motion (the "**Subpoenas**"), Bestwall seeks a limited set of non-privileged documents from Peter Angelos Law, P.C. ("**Angelos**"), as well as non-privileged deposition testimony, pertaining to whether there was a failure to disclose material exposure evidence in asbestos litigation against Bestwall. This discovery bears directly on the merits of the Claimant Representatives' estimation methodology based on historical settlement data. None of Angelos's arguments for quashing the Subpoenas have merit, and they should be overruled.

## STATEMENT OF FACTS

### A.    The Subpoenas Relate to Estimation Proceeding in the Bankruptcy Case

The Bankruptcy Court has ordered an estimation of asbestos personal injury claims against Bestwall pursuant to 11 U.S.C. § 502(c).[7] The parties are engaged in discovery related to the estimation proceeding, with fact discovery currently scheduled to end on April 4, 2022.[8]

As noted above, Bestwall's "legal liability" method assesses the characteristics of current and future claims that determine the merits of the claims under applicable state law, such as exposure to asbestos and damages.[9] The Claimant Representatives, by contrast, contend that

---

[6] The representative for current claimants in the Bankruptcy Case is the Official Committee of Asbestos Personal Injury Claimants (the "**ACC**"), and the representative for future asbestos claimants is the Future Claimants' Representative (the "**FCR**," and together with the ACC, the "**Claimant Representatives**").

[7] *Order Authorizing Estimation of Current and Future Mesothelioma Claims* (Bankr. D.I. 1577). Specifically, the Bankruptcy Court will estimate Bestwall's aggregate liability for mesothelioma claims arising from alleged exposure to particular joint compound products. *Id.* at 5-6. Mesothelioma is a rare cancer of the lining of the lung. Claims based on that disease accounted for the vast majority of the total payments Bestwall made to asbestos claimants before the Bankruptcy Case. Estimation is the procedure used to value claims in bankruptcy when liquidation of the claims through full-blown trials would cause undue delay. *See* 11 U.S.C. § 502(c).

[8] *Amended Case Management Order for Estimation of the Debtor's Liability for Mesothelioma Claims* (Bankr. D.I. 2315) ¶ 4.

[9] *See generally Debtor's Omnibus Objection to Motions of the Official Committee of Asbestos Personal Injury Claimants* (Bankr. D.I. 1551) at 3-21.

Bestwall's liability for current and future claims should be measured by extrapolating from its settlements of past asbestos claims.[10]

### B.    Plaintiffs' Failure to Admit and Disclose to Bestwall Exposures They Acknowledged Elsewhere

The Claimant Representatives' proposed estimation methodology puts at issue whether Bestwall's past settlements provide a reliable basis for estimating the debtor's current and future asbestos liability. Bestwall has evidence that certain plaintiffs and their law firms failed to disclose to Bestwall evidence of plaintiffs' exposures to other companies' asbestos-containing products, and their clients failed to acknowledge such exposures. This practice inflated settlement payments because, without that evidence, Bestwall was not able to show that plaintiffs' asbestos-related diseases were caused (in whole or in part) by exposures to other entities' products.[11] As a result, Bestwall was forced to pay more than if the plaintiffs' full exposure histories had been disclosed. Those settlements therefore are not a reliable basis for of estimating Bestwall's current and future liability for asbestos claims.

Unfortunately, the practice of failing to disclose exposure evidence is common in asbestos litigation. Courts on numerous occasions have discovered that plaintiffs and their law firms failed to disclose such evidence, prejudicing defendants' defenses to liability as well as their ability to allocate fault to other parties.[12] In particular, plaintiffs and their law firms

---

[10] *See The Official Committee of Asbestos Claimants' Motion to Establish a Methodology for Estimating the Debtor's Joint Compound Asbestos Liabilities* (Bankr. D.I. 1462-1) ¶ 35.

[11] Exposures to other products can provide a complete defense to liability for Bestwall by demonstrating that Bestwall's product was not a substantial cause of the plaintiff's disease. *See, e.g.*, *Thompson v. Better-Bilt Alum. Prods. Co.*, 832 P.2d 203, 207 n.6 (Ariz. 1992) (part of substantial causation inquiry involves examining "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it"). Exposures to other products can also allow Bestwall to allocate portions of a plaintiff's damages to other entities in jurisdictions that follow some form of several or proportional liability. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. §§ 33.012(b), 33.013.

[12] *See, e.g.*, *Golik v. CBS Corp.*, 472 P.3d 778, 790-92 (Or. Ct. App. 2020) (upholding grant of new trial and finding that failure to disclose bankruptcy trust claim evidence "materially affected defendant's substantial rights" and "materially impaired defendant's ability to present its case to the jury"); Peggy L. Ableman, A Case Study From a Judicial Perspective: How Fairness and Integrity in Asbestos Tort Litigation Can Be Undermined by Lack of Access

frequently target only solvent defendants, and fail to disclose in their tort cases evidence of exposures to products manufactured by companies that have sought bankruptcy protection and then established bankruptcy trusts ("**Trusts**") to pay their liabilities.[13] The bankrupt companies include all of the historically most prominent defendants in asbestos litigation, many of which manufactured extremely hazardous asbestos insulation, which contained a different form of asbestos than Bestwall joint compound that (unlike Bestwall's) has been proven to cause mesothelioma.[14]

As part of the asbestos bankruptcy process, claimants may acknowledge exposure to the bankrupt company's asbestos products in at least three ways. First, courts have required asbestos plaintiffs' firms representing multiple creditors to file statements pursuant to Bankruptcy Rule 2019 ("**2019 Statements**").[15] In the 2019 Statements, firms verify, under penalty of perjury, that each of the listed clients was a "creditor" represented by the firm, meaning that the individual possessed an asbestos personal injury claim against the debtor based on exposure to the debtor's product. In addition, many attorneys expressly verified in the filed 2019 Statements that the listed clients hold claims "for monetary damages due to personal injury caused by the Debtor[s] for manufacturing, marketing, distributing, selling, installing, producing and/or specifying the use of asbestos containing products."[16] The claimants identified in these 2019 statements were

---

to Bankruptcy Trust Claims, 88 Tul. L. Rev. 1185, 1189-1204 (2014) (summarizing case overseen by author, a former judge, and summarizing other cases of abuse). In a filing in Bestwall's Bankruptcy Case, the United States Department of Justice stated, "[B]oth courts and commentators have observed that a significant number of asbestos claimants in the tort system and in Chapter 11 proceedings have provided conflicting and/or inaccurate information regarding the asbestos products to which they were exposed." *Statement of Interest on Behalf of the United States of America Regarding Estimation of Asbestos Claims* (Bankr. D.I. 1557) ("**USA Statement of Interest**").

[13] *See generally* USA Statement of Interest at 4-8.

[14] *See In re Garlock Sealing Techs.*, 504 B.R. 71, 83 (Bankr. W.D.N.C. 2014).

[15] *See, e.g.,* Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Oct. 22, 2004) (attached as **Ex. A**) ("**Pittsburgh Corning Order**").

[16] *See, e.g.*, Peter Angelos's Verified Statement in Connection with the Representation of Creditors as Required by F.R.B.P. Rule 2019, *In re Owens Corning*, No. 00-3837-JKF (Bankr. D. Del. Feb. 13, 2004) (attached as **Ex. B**).

not easily obtainable by tort defendants such as Bestwall, or members of the public, because firms were allowed to file exhibits containing the names of such claimants off the docket. *See, e.g.*, Pittsburgh Corning Order at 2.

Second, claimants cast ballots on bankruptcy plans, which is necessary to confirm those plans. *See* 11 U.S.C. § 524(g)(2)(B)(ii) (requiring 75% of asbestos claimants to vote in favor of plan). The ballot generally requires the claimant or his or her lawyer to certify under penalty of perjury that the claimant was exposed to the debtor's asbestos products. These ballots also were not easily obtainable by tort defendants such as Bestwall or members of the public because they were maintained by debtors or balloting agents and usually not posted publicly.

Third, if the company succeeds in establishing an asbestos Trust, claimants must file a Trust claim in order to receive payment from the Trust.[17] In order to be paid on a Trust claim, the plaintiff must submit meaningful and credible evidence of asbestos exposure for which that Trust is responsible. *See Garlock*, 504 B.R. at 86. Each Trust pays claims in an administrative process outside of public view and separate from civil tort litigation, which plaintiffs have exploited by withholding evidence of exposure to bankrupt companies' products until their tort cases are fully resolved, and then using that withheld evidence to support Trust claims.[18]

Whether plaintiffs and their law firms had a practice of failing to disclose exposure evidence in Bestwall's historical cases is highly relevant to the estimation proceeding in the Bankruptcy Case. In a previous case in the district where Bestwall's Bankruptcy Case is pending, involving longtime asbestos defendant Garlock Sealing Technologies ("**Garlock**"), the Bankruptcy Court rejected the claimant representatives' settlement extrapolation estimation

---

[17] This brief uses "Trust claim" to refer collectively to Trust claim forms and any supporting documents submitted therewith containing evidence of that plaintiff's exposure to any asbestos-containing product (such as declarations or affidavits of exposure).
[18] *See generally* USA Statement of Interest at 4-8.

methodology because it found "[t]he withholding of exposure evidence by plaintiffs and their lawyers was significant and had the effect of unfairly inflating the recoveries against Garlock from 2000 through 2010." *Garlock*, 504 B.R. at 86-87.

The *Garlock* court made these findings relying in part on discovery (the same type Bestwall is seeking) from law firms concerning certain high-value settled cases. *Id.* at 84-86. Five law firms were required to produce Trust claims, bankruptcy ballots, and 2019 Statements for certain plaintiffs, as well as documents through which the firms had disclosed exposures to Garlock during tort litigation.[19] The firms were then required to appear at Rule 30(b)(6) depositions to testify about their disclosures in those cases and the evidence revealed by the Trust claims, bankruptcy ballots, and 2019 Statements.[20]

For the 15 cases subject to this discovery in *Garlock*, the evidence showed that "exposure evidence was withheld in *each and every one* of them . . . [O]n average plaintiffs disclosed only about 2 exposures to bankrupt[] companies' products, but after settling with Garlock made claims against about 19 such companies' Trusts." *Garlock*, 504 B.R. at 84 (emphasis in original). The Bankruptcy Court also relied on testimony from the law firms, including testimony by a plaintiff lawyer that he was obligated to delay filing Trust claims until after resolving claims against solvent defendants in order to maximize his clients' recoveries, which the Bankruptcy Court characterized as "seemingly some perverted ethical duty." *Id.*

---

[19] Order Denying in Part and Granting in Part Motion by Official Committee of Asbestos Personal Injury Claimants for Protective Order With Respect to Document Demands Included in Garlock's Subpoenas Duces Tecum to Five Law Firms, Certain Firms' Joinders in Committee's Motion, and Motion to Quash and for Protective Order of Troy D. Chandler and Williams Kherkher Hart Boundas L.L.P., *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. Dec. 12, 2012) (attached as **Ex. C**) ("**Garlock Law Firm Order**"); Garlock Subpoenas to Law Firms (attached as **Ex. D**). The Bankruptcy Court granted a motion to quash with respect to one plaintiff (John Phillips) whose case was subject to a separate fraud suit in the *Garlock* bankruptcy case, because the same discovery was already occurring in that suit. *See* Garlock Law Firm Order ¶¶ 1-2.
[20] Ex. D (Garlock Subpoenas to Law Firms).

The *Garlock* estimation decision was a seminal event that shed light on an abusive practice in asbestos litigation.[21] In its wake, numerous states passed legislation imposing stringent requirements on disclosure of Trust claim forms, and Congress has considered federal legislation.[22]

### C.      The Subpoenas to Angelos

If law firms and claimants engaged in these same practices against Bestwall, then, as the Bankruptcy Court found in *Garlock*, Bestwall's historical settlements would be "useless" in estimating its liability for current and future mesothelioma claims because they would be "infected by the manipulation of exposure evidence." *Garlock*, 504 B.R. at 82, 94.

The Subpoenas to Angelos (along with similar subpoenas to other plaintiff law firms) seek crucial discovery relevant to this issue, the same as the discovery from law firms that informed key findings in the *Garlock* opinion. The subpoena *duces tecum* to Angelos (attached as Exhibit A to the Motion) seeks a limited set of non-privileged documents for seven "Selected Plaintiffs" who received significant settlements from Bestwall. Requests 1 through 4 seek Trust claims, 2019 Statements, and bankruptcy ballots filed for the Selected Plaintiffs, as well as documents sufficient to show the status of any Trust claim. Requests 5 through 7 seek the documents through which Angelos or the Selected Plaintiffs disclosed to Bestwall and other defendants the asbestos products to which they were exposed.

---

[21] *See, e.g.*, *Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp.*, 2015 WL 4773425, at *5 (Bankr. W.D. Pa. Aug. 12, 2015) ("The evidence uncovered in the *Garlock* case arguably demonstrates that asbestos plaintiffs' law firms acted fraudulently or at least unethically in pursuing asbestos claims in the tort system and the asbestos trust system"); Daniel J. Ryan & John J. Hare, Uncloaking Bankruptcy Trust Filings in Asbestos Litigation: A Survey of Solutions to the Types of Conduct Exposed in Garlock's Bankruptcy, 15 Mealey's Asbestos Bankr. Rep. (Aug. 2015); Peggy Ableman et al., A Look Behind the Curtain: Public Release of Garlock Bankruptcy Discovery Confirms Widespread Pattern of Evidentiary Abuse Against Crane Co., 15 Mealey's Litig. Rep.: Asbestos (Nov. 2015).

[22] *See, e.g.*, Ala. Code § 6-5-690 to -694; Ariz. Rev. Stat. § 12-782; Mich. Code § 600.3010 to .3016; Fairness in Class Action Litigation and Furthering Asbestos Claims Transparency Act of 2016 (H.R. 1927, 114th Cong.).

The subpoena *ad testificandum* (attached as Exhibit B to the Motion) then seeks a Federal Rule of Civil Procedure 30(b)(6) deposition of Angelos concerning the documents produced, as well as the following topics: (a) communications between Angelos and Bestwall with respect to the Selected Plaintiffs' claims (including settlement negotiations between the firm and Bestwall); (b) Angelos's use in litigation of an article from a scientific journal that Bestwall believes was based on cases where non-disclosure of evidence occurred (the Dahlgren Article); (c) public statements by Angelos or its lawyers concerning any Selected Plaintiff; and (d) any co-counsel, referral, or other joint representation arrangement or agreement with respect to any Selected Plaintiff.

Bestwall has evidence that Angelos engaged in a practice of failing to disclose material exposure evidence. In fact, one of the Selected Plaintiff's cases was highlighted as an example of litigation abuse in Congressional testimony by Union Carbide attorney Jim Stengel.[23] That plaintiff[24] sued Bestwall claiming exposure to asbestos as a carpenter at the National Security Agency exclusively between 1965 and the mid-1970s.[25] Bestwall and other defendants actively sought Trust claim evidence, but no claim forms were disclosed while Bestwall was in the case. In his deposition, the plaintiff denied having filled out affidavits or trust forms.[26] In his statement to Congress, Jim Stengel said, "[a]t a hearing on the matter, plaintiff's counsel explained that he had been slow in producing the trust materials because he had disagreed with the Court's prior

---

[23] *See* Problems with Asbestos Compensation System, Hr'g Before Subcomm. on the Const. of the Comm. on the Judiciary, House of Reps., 111th Cong. (Sept. 9, 2011) ("**Stengel Statement**"), 2011 WLNR 24791123.

[24] It has been Bestwall's practice in its Bankruptcy Case to assign pseudonyms to plaintiffs where the identity of the plaintiff is not material to the pending litigation. Bestwall has no objection to identifying this plaintiff by name if either the Court or Angelos wishes that information to be made public.

[25] Plaintiff's Fifth Supplemental and/or Amended Answers to Defendants' Joint Interrogatories (Md. Cir. Ct. Balt. City Mar. 17, 2010) (attached as **Ex. E**).

[26] Plaintiff's Dep. (Jan. 25, 2007) (excerpts attached as **Ex. F**) at 252.

ruling, some two years previously, and went on to complain that in ordering this disclosure the Court had 'opened Pandora's Box.'"[27]

Two days before trial was set to begin, Angelos produced Trust claims, some supported by two undisclosed affidavits from the plaintiff, that showed "substantial and inexplicable discrepancies between the positions taken in Court and the Trust claims."[28] For example, the Trust claims and affidavits alleged exposure from 1947 to 1991 and identified exposure sites where the plaintiff had claimed not to have been exposed during his deposition.[29] At least six of those trust claims were filed before the plaintiff's deposition.[30] Union Carbide argued the discrepancies were material to its alternative exposure defense and that the post-1985 exposure implicated the Maryland cap on non-economic damages.[31]

Bestwall has developed further evidence regarding this plaintiff beyond what Stengel knew when he testified before Congress. The *Garlock* public record shows that this plaintiff filed numerous trust claims, including against trusts responsible for highly dangerous insulation products, based on exposures not disclosed in his tort case.

Bestwall has other evidence showing that Angelos failed to disclose material exposure evidence in Selected Plaintiff cases, but the sources of that information have been partial and incomplete. Only with the discovery requested in the Subpoenas will Bestwall be able to obtain a full picture of Angelos's conduct with respect to disclosure (and lack thereof) of exposure evidence in the Selected Plaintiffs' cases.

---

[27] Stengel Statement.
[28] *Id.*
[29] Defendant Union Carbide's Emergency Motion for Sanctions and/or Related Relief and to Shorten Time for Response (Md. Cir. Ct. Balt. City Jan. 10, 2011) (attached as **Ex. G**) at 10.
[30] *Id.* at 9
[31] *Id.* at 2-3.

**ARGUMENT**

**I.     The Subpoenas Were Properly Issued Under Civil Rule 45 Rather Than Bankruptcy Rule 2004 Because the Estimation Proceeding Is a Pending Contested Matter.**

Angelos first argues that the Subpoenas should be quashed because the Bankruptcy Court was required to authorize them pursuant to Federal Rule of Bankruptcy Procedure 2004 ("**Rule 2004**"). Motion at 5-7. Angelos is incorrect. Bankruptcy Rule 9016 provides that "Rule 45 F.R. Civ. P. applies in cases under the Code." Thus, in particular, Rule 45 of the Federal Rules of Civil Procedure ("**Civil Rules**") (governing issuance of subpoenas to third parties) "applies in . . . contested matters." *In re Symington*, 209 B.R. 678, 688–89 (Bankr. D. Md. 1997) (citing Collier on Bankruptcy ¶ 9016.01 (15th ed. rev. 1996)). The pending estimation proceeding in the Bankruptcy Case is a contested matter.[32] Thus, Bestwall properly issued the Subpoenas pursuant to Civil Rule 45, made applicable by Bankruptcy Rule 9016.

Angelos argues that it is not a party to the estimation proceeding, and thus can only be required to provide discovery pursuant to Rule 2004, governing an "examination" in bankruptcy. Fed. R. Bankr. P. 2004(a)-(b). But an examination under Rule 2004 is a separate and independent authority for discovery under the Bankruptcy Rules, available even when a contested matter or adversary proceeding is not pending, and enforceable through a Bankruptcy Rule 9016/Civil Rule 45 subpoena. *See* 9 Collier on Bankruptcy ¶ 2004.01 (16th ed. 2021).

All authority makes clear that a Rule 2004 examination is *not* necessary when a contested matter or adversary proceeding is pending. *See In re Patel*, No. 16-65074-LRC, 2017 WL 377943, at *2 (Bankr. N.D. Ga. 2017) ("Under a plain reading of Federal Rule 45 and

---

[32] *See Case Management Order for Estimation of the Debtor's Liability for Mesothelioma Claims* (Bankr. D.I. 1685) ¶¶ 1-5 (describing estimation as a contested matter and applying Civil Rules to discovery); Fed. R. Bankr. P. 9014 advisory committee's note ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter."); Motion at 4, 6 (describing estimation proceedings as a contested matter).

[Bankruptcy] Rules 9002(1), 9016, and 2004, to obtain a subpoena for production of documents, a party in interest must either [1] **be a party to an adversary proceeding, contested petition, or contested matter,** or, [2] when there is no litigation pending, have obtained a Rule 2004 order.") (emphasis added); *In re Mobley*, 580 B.R. 453, 456 (Bankr. D.S.C. 2017) (in "contested matter under Fed. R. Bankr. P. 9014 . . . the parties are permitted to conduct discovery regarding the motion as provided under Fed. R. Bankr. P. 9014(c), **as well as issue subpoenas under Fed. R. Bankr. P. 9016**") (emphasis added); *Symington*, 209 B.R. at 688-89; Howard J. Steinberg, 1 Bankruptcy Litigation § 5:217 ("A subpoena can be issued if there is a pending adversary proceeding or contested matter. If neither is pending, a subpoena can be issued if an order authorizing a Bankruptcy Rule 2004 examination is entered."); 10 Collier on Bankruptcy ¶ 9016.01 (16th ed. 2021) ("Placed as it is in Part IX of the Bankruptcy Rules, Rule 9016 applies in adversary proceedings, **contested matters**, contested or involuntary petitions, Rule 2004 examinations, and all other matters in a bankruptcy case in which testimony may be compelled.") (emphasis added). Accordingly, discovery from third parties in bankruptcy contested matters routinely takes place pursuant to Bankruptcy Rule 9016/Civil Rule 45 alone, without the need for a Rule 2004 order.[33]

In fact, bankruptcy courts generally apply a "pending proceeding rule" under which "Rule 2004 discovery is not *permitted* once an adversary proceeding [or contested matter] has been initiated." *In re Blackjewel, L.L.C.*, No. 3:19-BK-30289, 2020 WL 6948815, at *6 (Bankr. S.D.W. Va. July 14, 2020) (emphasis added); *see also id.* ("There is a 'well-recognized rule that

---

[33] For example, the discovery from law firms in *Garlock* proceeded pursuant to subpoenas without a Rule 2004 order from the Bankruptcy Court. *See* Garlock Law Firm Order (Ex. C); Garlock Subpoenas to Law Firms (Ex. D). And in Bestwall's Bankruptcy Case, the ACC recently issued its own third-party subpoenas without seeking a Rule 2004 order. *See Notice of Serving Subpoenas to Produce Documents, Information, or Objects and Subpoenas to Testify at a Deposition* (Bankr. D.I. 2327); *Second Notice of Serving Subpoenas to Produce Documents, Information, or Objects and Subpoenas to Testify at a Deposition* (Bankr. D.I. 2338).

once an adversary proceeding or contested matter is commenced, discovery should be pursued

under the Federal Rules of Civil Procedure and not by Rule 2004.'") (quoting *In re Enron Corp.*,

281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)); *In re Young*, No. 17-14065-NPO, 2018 WL

6060338, at *4 (Bankr. N.D. Miss. Nov. 19, 2018) (similar); *In re Camferdam*, 597 B.R. 170,

174 (Bankr. N.D. Fla. 2018) (similar); *In re Symington*, 209 B.R. at 685 (similar).[34]

Angelos's argument that discovery from a third party can only take place pursuant to

Rule 2004 conflicts with universal bankruptcy case practice, the pending proceeding rule, and

the plain text of Bankruptcy Rule 9016. Rule 9016 provides generally that Civil Rule 45 "applies

in cases under the Code," and does not restrict Civil Rule 45 to Rule 2004 examinations. To the

contrary, as the *Patel* case cited by Angelos observes, Civil Rule 45 applies to "actions," and

Bankruptcy Rule 9002(1) provides that "action" includes contested matters when it is used in

incorporated Federal Rules (such as Civil Rule 45). *In re Patel*, 2017 WL 377943, at *2. Thus,

by the plain terms of the Bankruptcy Rules, Rule 9016 applies in contested matters, and is not

restricted to Rule 2004 examinations.

Angelos cites no cases that support its extraordinary argument. Both *In re Patel*, 2017

WL 377943, at *2 and *In re Murray*, 620 B.R. 286, 287 (Bankr. E.D. Mich. 2020) hold

(unremarkably) that when a contested matter is *not* pending, a person seeking to conduct

discovery in a bankruptcy case must do so by Rule 2004 examination. They nowhere hold that a

party to a pending contested matter must obtain a Rule 2004 order before issuing subpoenas, and

in fact both hold expressly the contrary. *Patel*, 2017 WL 377943, at *2; *Murray*, 620 B.R. at 287

(citing *Patel*). Because Bestwall is a party to the contested estimation, it has the authority to use

---

[34] Application of the pending proceeding rule is a matter of discretion, and there are circumstances where a bankruptcy court will permit use of Rule 2004 despite a pending contested matter or adversary proceeding. But the existence of the rule shows that Rule 2004 is not the default where a contested matter is pending—and certainly not required, as Angelos argues.

Bankruptcy Rule 9016 to obtain discovery from third parties, including Angelos, and its Subpoenas are procedurally proper.

## II.     The Subpoenas Are Proper Under Civil Rules 26 and 45.

The discovery sought through the Subpoenas is proper under Civil Rules 26 and 45 for the same reason nearly identical discovery was proper in the *Garlock* case: it is necessary to determine whether, in past tort cases, Angelos and the Selected Plaintiffs failed to disclose to Bestwall exposure evidence they used in Trust claims, bankruptcy ballots, and 2019 Statements. The documents and testimony will be just as important for the Bankruptcy Court in Bestwall's Bankruptcy Case as they were for the *Garlock* court. Angelos's arguments to the contrary are without merit.

### A.     The Subpoenas do not implicate the heightened standard for discovery from opposing counsel, but, in any event, that standard is satisfied.

First, Angelos seeks to apply the Eighth Circuit's doctrine from *Shelton v. Am. Motors Corp.* that sometimes sets a higher bar for parties serving deposition subpoenas on opposing counsel in a case. *See* Motion at 8-10 (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)). Even assuming that the *Shelton* rule is applicable in the Fourth Circuit, the rule does not apply here because Angelos is not opposing counsel in the current litigation and, therefore, Bestwall's Subpoenas do not implicate the *Shelton* court's concerns.

In *Pamida, Inc. v. E.S. Originals, Inc.*, the Eighth Circuit refused to extend application of the *Shelton* rule to subpoenas regarding a concluded case. 281 F.3d 726, 730 (8th Cir. 2002). There, the court clarified that "[t]he *Shelton* test was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy." *Id.* Those concerns are not implicated when an attorney is subpoenaed regarding cases other than the current case. *Id.*; *Duke Energy Carolinas, LLC v. NTE*

*Caroinas II, LLC*, No. 319CV00515KDBDSC, 2021 WL 5826786, at *2 (W.D.N.C. Dec. 8, 2021) ("*Shelton*, however, is applicable only where the attorney being deposed is trial or litigation counsel and the subject matter of the deposition concerns litigation strategy.").

Although the Fourth Circuit has not adopted the heightened scrutiny from *Shelton*, district courts in this circuit that have followed *Shelton* have also followed *Pamida* in limiting *Shelton*'s reach to deposition subpoenas where opposing counsel are asked about the current litigation.[35] *CTB, Inc. v. Hog Slat, Inc*., No. 7:14-CV-157-D, 2016 WL 1244998, at *6 (E.D.N.C. Mar. 23, 2016) (noting that "Shelton's heightened standard may not be appropriate in circumstances . . . where a party is seeking to depose opposing trial counsel concerning a prior concluded matter."); *Buyer's Direct Inc. v. Belk, Inc*., No. 5:10-CV-65-H, 2012 WL 3278928, at *3 (E.D.N.C. Aug. 10, 2012) ("*Shelton*, however, is applicable only where the attorney being deposed is trial or litigation counsel and the subject matter of the deposition concerns litigation strategy.") (citing *Hughes v. Sears, Roebuck & Co*., No. 2:09-CV-93, 2011 WL 2671230, at *5 (N.D.W. Va. July 7, 2011)); *Duke Energy Carolinas*, 2021 WL 5826786, at *2 (same).

Here, the Subpoenas seek discovery about the Selected Plaintiffs' cases, which have concluded, and Angelos is not counsel in the estimation proceeding in the Bankruptcy Court.[36] Either of these reasons, independently, removes the concerns under *Shelton* and *Pamida* regarding depositions of opposing counsel.

---

[35] Even if *Shelton* could somehow apply to Bestwall's deposition subpoena, it should not extend to the document subpoena. "It is not at all clear that *Shelton* extends to other forms of discovery," beyond depositions. *In re Allergan, Inc*, No. 14CV02004DOCKES, 2016 WL 5922717, at *3 (C.D. Cal. Sept. 23, 2016) (citation omitted). "Indeed, although some courts have applied the *Shelton* framework to requests for production, other courts applying *Shelton* have actually encouraged the use of written discovery as a viable alternative to deposing opposing counsel." *Id.*

[36] Angelos cites *Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc*., 237 F.R.D. 215, 219–20 (D. Neb. 2006) for the proposition that an attorney need not be involved in a lawsuit to gain the protections of *Shelton*, but the reliance is misplaced. The *Desert Orchid Partners* court applied *Shelton* because the attorney "was involved with the defense strategy and the litigation of [the] case" before departing for another job. *Desert Orchid Partners*, 237 F.R.D. at 219. Here, Angelos has never been counsel to a party to the estimation proceeding in the Bankruptcy Case.

Even if the Court applies *Shelton*, that standard is satisfied here. A deposition of opposing counsel is permissible if: (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *CTB*, 2016 WL 1244998, at *6. As explained above, Bestwall's deposition subpoena to Angelos seeks nonprivileged evidence of vital importance to its Bankruptcy Case, and it can only practically be obtained from Angelos because it concerns whether that firm had a practice of failing to disclose evidence in cases it handled against Bestwall.

**B.      The Subpoenas do not seek any privileged or otherwise protected information.**

Angelos alleges in general terms that the Subpoenas seek privileged or protected information. To the contrary, Bestwall tailored the Subpoenas to seek categories of information that plainly are not privileged in any way.

**1.      Trust claims.**

Angelos seems to argue that Trust claims constitute privileged settlement negotiations (Motion at 14), but also admits that "courts have determined that Trust Claims are generally discoverable." *Id.* at 16. In fact, courts have almost universally held that these documents exchanged between adversaries—i.e., plaintiffs and entities established to assume the liabilities of former asbestos defendants—are relevant and discoverable in asbestos litigation. *See, e.g.*, *Willis v. Buffalo Pumps, Inc.*, No. 12CV744-BTM DHB, 2014 WL 2458247, at *1 (S.D. Cal. June 2, 2014) (noting that "[f]ederal and state courts have routinely held that claims submitted to asbestos bankruptcy trusts are discoverable" and collecting cases); *In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig.*, No. MDL 13-2419-RWZ, 2016 WL 11214564, at *1 (D. Mass. Mar. 8, 2016) ("[T]he Court finds that all documents Plaintiffs submitted to the . . . Trust, including claim forms and supporting documentation, are discoverable.").

15

The exposure information contained in Trust claims is so fundamental in asbestos litigation, courts have repeatedly sanctioned plaintiffs and law firms for failing to disclose it.[37] Key jurisdictions, including Baltimore, now require disclosure of Trust claims as a matter of course through case management orders governing asbestos litigation.[38] And 17 states have enacted statutes requiring automatic disclosure of Trust claims in asbestos litigation.[39] Finally, as described above, the *Garlock* court ordered production of Trust claims with respect to 15 settled cases, and the information led to some of the most important findings made by that court in its estimation opinion. *See Garlock*, 504 B.R. at 84-87.

Angelos cites no authority holding that Trust claims are not discoverable. It instead appears to rely on the inaccurate allegation that the Subpoenas seek "settlement figures" that

---

[37] *See, e.g., Golik v. CBS Corp.*, 472 P.3d 778, 790-92 (Or. Ct. App. 2020) (upholding grant of new trial and finding that failure to disclose affidavit supporting Trust claims "materially affected defendant's substantial rights" and "materially impaired defendant's ability to present its case to the jury"); *Kananian v. Lorillard Tobacco Co.*, No. CV-442750, 2007 WL 4913164, at *19 (Ohio Ct. Com. Pl. Jan. 17, 2007) (revoking *pro hac vice* admission of attorney after finding misconduct relating to disclosure of Trust claims); Peggy L. Ableman, *A Case Study from a Judicial Perspective: How Fairness and Integrity in Asbestos Tort Litigation Can Be Undermined by Lack of Access to Bankruptcy Trust Claims*, 88 Tul. L. Rev. 1185, 1193-94 (2014) (describing case overseen by Judge Ableman where court found that failure to disclose Trust claim information had materially prejudiced defendant); O'Brien, John, *Ky. Judge: Asbestos firm should have turned over trust claim evidence to defendants*, Legal Newsline (Aug. 5, 2015) (describing failure to disclose Trust claims as "disingenuous" and "disturbing").

[38] *See, e.g.*, Consolidation Order and Pretrial Schedule, *In re Baltimore City Asbestos Litigation*, at 2 (setting deadline for Plaintiffs to "produce all claim forms and any exposure affidavits or statements submitted to any bankruptcy entity or trust") *available* at https://www.baltimorecitycourt.org/wp-content/uploads/2016/12/Balt-City-CCt-Civil-Division-DCM-Plan.-revision-Nov-18-2016.pdf; Master Discovery to All Plaintiffs, *In re Asbestos Litig.*, No. 2004-03964 (Harris Cnty., TX) (Texas Asbestos MDL) at 8 (interrogatory 10), 37 (request for production 46); Case Management Order, *In re N.Y.C. Asbestos Litig. (NYCAL)*, No. 782000/2017 (N.Y.C. June 20, 2017) at 41, Ex. C (Defendants' Fourth Amended Standard Set of Interrogatories and Requests for Production of Documents) at 12, 14; Standing Case Management Order for All Asbestos Personal Injury Cases, *In re All Asbestos Litig. Filed in Madison Cty.* (Ill. Cir. Ct. Madison Cty. Aug. 19, 2016); Corrected Case Management Order Requiring Disclosure of Bankruptcy Trust Claims, Claims-Related Materials and Asbestos Exposure Facts, *In re LAOSD Asbestos Cases*, JCCP Case No. 4674 (Cal. Super. Ct. Los Angeles Cty. Jul. 15, 2015); Standing Order No. 1—Amended on Oct. 10, 2013, *In re Asbestos Litig.*, C.A. No. 77C-ASB-2 (Del. Super. Ct. Oct. 10, 2013); Amended Pre-Trial Order no. 9 ¶ XIII(C)(7)(o)(2)(e), *In re Mass. State Court Asbestos Litig.* (Mass. Super. Ct. June 27, 2012).

[39] Ala. Code § 6-5-690 to -694; Ariz. Rev. Stat. § 12-782; Ga. Code Ann. § 51-14-7; Iowa Code §§ 686A.1-.9; Kan. Stat. §§ 60-4912 to -4918; Mich. Code § 600.3010 to .3016; Miss. Code §§ 11-67-1 to -15; N.C.G.S. §§ 1A-1, Rule 26(b)(2a); 8C-1, Rule 415; and 1-75.12; N.D. Cent. Code §§ 32-46.1-01 to -05; Ohio Rev. Code Ann. §§ 2307.951-.954; 76 Okla. Stat. Ann. §§ 81-89; S.D. Codified Laws §§ 21-66-1 to -11; Tenn. Code §§ 29-34-601 to -609; ; Tex. Civ. Prac. & Rem. Code §§ 90.051-.058; Utah Code §§ 78B-6-2001 to -2010; W. Va. Code Ann. § 55-7F-1 to -11; Wis. Stat. Ann. § 802.025.

allegedly constitute confidential settlement communications. Motion at 16. But the Subpoenas nowhere seek settlement amounts. In addition to the Trust claims (which do not contain settlement amounts), the Subpoenas seek (in document request 2) only documents "sufficient to show the status of any claim asserted against a Trust by a Selected Plaintiff." In the administrative process followed by Trusts, a claim is either pending or resolved, and there are a limited number of resolved statuses (such as withdrawn, approved, paid, or rejected). Whether a Trust claim is pending or resolved is not privileged, and courts have ordered the production of such information.[40]

Angelos also suggests that a decision from the Delaware district court with respect to separate discovery concerning Trust claims is relevant here. It is not. The Bankruptcy Court authorized Bestwall to subpoena ten Delaware Trusts requesting claim and exposure data (not Trust claim forms) for all of the 15,000 mesothelioma claims Bestwall settled or resolved by verdict before the Bankruptcy Case. *See* 3/4/21 Hr'g Tr. (Bankr. D.I. 1647) at 13 (finding the information "is relevant to the determination of whether pre-petition settlements of mesothelioma claims provide a reliable basis for estimating the debtor's asbestos liability which has been put at issue by the ACC and the FCR").[41] After the subpoenas were served, the Delaware district court quashed them without prejudice, finding that the discovery should be limited to a 10% sample and subjected to additional privacy protections for personally identifiable information. *In re Bestwall LLC*, 2021 WL 2209884, at *7 (D. Del. June 1, 2021);

---

[40] *See, e.g.,* Order Granting in Part and Overruling in Part Objections to Subpoena by Delaware Claims Processing Facility, LLC and Associated Trusts, Establishing Claimant Objection Procedures, and Governing the Confidentiality of Information Provided in Response to the Subpoena, *In re Garlock Sealing Techs.*, No. 10-31607 (Bankr. W.D.N.C. Aug. 7, 2012) (Dkt. 2430) (attached as **Ex. H**) ¶ 5.

[41] Bestwall proceeded by Rule 2004 examination in that matter because it filed the motion before the Bankruptcy Court ordered an estimation proceeding (*i.e.*, before there was a pending proceeding). The discovery dealt with only ten Trusts, and is not a substitute for the discovery Bestwall seeks from Angelos with respect to all Trust claims filed by a small number of Selected Plaintiffs.

Order ¶ 2, *In re Bestwall LLC*, No. 21-141 (D. Del. Jun. 17, 2021) (Dkt. 33). But the Delaware

district court recognized Bestwall "has demonstrated a legitimate purpose in requesting the

Claimant data to aid in plan formulation and estimation proceedings," and made clear Bestwall

has the "right to seek reissuance of the subpoenas seeking a narrower document production"

consistent with the court's order regarding a sample and protections for personally identifiable

information. *In re Bestwall LLC*, 2021 WL 2209884, at *7.[42]

       The Motion misleadingly quotes language from the Trusts' procedures (contained in the

"Background" section of the Order) to suggest that the Delaware district court was motivated by

concerns about "disclos[ing] confidential information, such as settlement figures, or evidence of

negotiations or compromise, regarding the Trust information." Motion at 16. On the contrary, the

Delaware district court was concerned about the scope of a request that implicated 15,000

claimants and would have initially required the production of personally identifiable information

in electronic form. *Id.* at *6. Those concerns have no bearing on the discoverability of Trust

claim forms with respect to the seven Angelos Selected Plaintiffs—documents Angelos and its

clients routinely are required to produce to defendants in asbestos cases.

      **2.**    **Bankruptcy filings.**

       Angelos does not argue that bankruptcy ballots or Rule 2019 Statements are privileged or

otherwise protected. *Cf.* Motion at 18 (admitting that "[t]o the extent that any Rule 2019

Statement was filed bearing the name of any Selected Plaintiff, such documents are public record

equally accessible to Bestwall."). Instead, it argues that orders permitting Angelos to file exhibits

to 2019 Statements (showing whom Angelos represented in previous bankruptcy cases) off the

---

[42] Bestwall has appealed this ruling to the United States Court of Appeals for the Third Circuit. No. 21-2263.

public docket prohibit Angelos from producing the exhibits to Bestwall without permission from the bankruptcy court. Motion at 18-19.

Angelos's argument is wrong. Bestwall can obtain access to 2019 Statements and exhibits by either (1) requesting access in the bankruptcy courts where the exhibits are filed off the docket, or (2) serving a subpoena on Angelos. Here, Bestwall exercised the latter option.

Angelos's position that Bestwall can only receive copies by seeking access from the bankruptcy courts conflicts with *In re Motions for Access of Garlock Sealing Techs. LLC*, 488 B.R. 281 (D. Del. 2013), one of the cases it relies on. In that case, the plaintiff firms opposed giving Garlock access to Rule 2019 exhibits, arguing among other things that Garlock could have sought the same documents through discovery in the bankruptcy case. *Id.* at 298. The court disagreed, concluding that the existence of one mechanism to obtain the documents did not foreclose another:

> [S]ome appellees emphasize that Garlock could seek the same information it is requesting here through the discovery process in its own bankruptcy, for instance by subpoenaing the third-party law firms. Garlock acknowledges this potential opportunity—and has evidently pursued it to some extent. . . . But just because Garlock might have another mechanism for obtaining the information it seeks here does not, in the circumstances presented here, diminish Garlock's right to pursue access through the process it is pursing in this Court.

*Id.* In addition, the court in *Garlock*—the same court whose Bankruptcy Rule 2019 access order Angelos cites—ordered production of 2019 Statements by the five law firms subject to the law firm discovery in that case. *See* Garlock Law Firm Order (Ex. C); Garlock Subpoenas to Law Firms (Ex. D).

As explained above, 2019 Statements and bankruptcy ballots for a Selected Plaintiff would indicate that the plaintiff had exposure to the bankrupt entity's products. That information could be highly material in evaluating those plaintiffs' settlements with Bestwall.

      **3.**     **Disclosures to and communications about alternative exposures with Bestwall during settlement negotiations.**

Next, Angelos argues that it should not have to produce documents through which it disclosed exposures to Bestwall in tort cases, arguing that Bestwall already possesses or has public access to this information. Motion at 21. But Bestwall has an interest in receiving these clearly non-privileged documents to ensure it has the complete set of any such documents allegedly showing disclosure, and to avoid a future allegation by Angelos (or the parties in the Bankruptcy Case) that Angelos possesses some other document showing disclosure of exposures to Bestwall.

Moreover, "even if a document is publicly available or in the opposing party's possession, a party must still disclose it." *Martino v. Kiewitt N.M. Corp*., 600 F. Appx. 908, 911 (5th Cir. 2015). Bestwall also is entitled to examine Angelos concerning such documents—for example, to ask Angelos to identify in those documents where exposures evidenced by Trust claims, ballots, or 2019 Statements were disclosed.

Contrary to Angelos's allegation, Motion at 21, Bestwall seeks only documents within Angelos's possession, custody, or control, not documents in the possession of third parties, and the requests to Angelos cannot fairly be construed otherwise. Bestwall also does not seek information not known or reasonably available to Angelos, for example due to the departure of attorneys. *Id.* at 22. Nor does Bestwall seek any documents protected by attorney-client privilege or the work product doctrine. *Id.* at 21-22.

For similar reasons, Bestwall has a legitimate interest in deposing Angelos about communications with Bestwall during settlement negotiations in the Selected Plaintiff cases. *See* Motion at 14. Bestwall has its perspective on those communications, but it is entitled to examine Angelos, including about any disclosures of exposure evidence Angelos alleges occurred in those

communications. Again, Bestwall seeks no privileged communications between Angelos and its clients, contrary to allegations made in the Motion. *Id.* at 14-15.

### 4.      Dahlgren Article.

Angelos also objects to the deposition topic concerning the firm's use of the Dahlgren Article. The article, published by plaintiff expert James Dahlgren in 2012, purported to present "three cases of mesothelioma in which the only known exposure to asbestos was from joint compound."[43] It has been used against Bestwall in several cases since 2012 as a basis to claim Bestwall's joint compound products were hazardous. Using information from the *Garlock* public record, Bestwall not only uncovered the identities of the three previously unidentified individuals, but also determined that all three were plaintiffs against Bestwall who failed to disclose or acknowledge material exposure evidence in their tort cases showing they had been exposed to many products other than joint compound, directly contrary to the claims made in the Dahlgren Article.[44]

Angelos argues that this information about its use of the Dahlgren Article may already be available to Bestwall and may be privileged or protected. Motion at 20. These objections are meritless. The fact that Bestwall may already possess some information related to Angelos's use of the Dahlgren Article in litigation does not relieve Angelos of its responsibility to respond to relevant and proper discovery. *See Martino*, 600 F. App'x. at 911. Nor would any privilege apply to Angelos's use of the article in cases against Bestwall. Bestwall is entitled to depose Angelos about its use of the Dahlgren Article in cases against Bestwall, to understand the impact an article based on incorrect evidence may have had on Bestwall's settlement history.

---

[43] Dahlgren & Peckham, "Mesothelioma associated with use of drywall joint compound: a case series and review of literature," Int'l J. of Occ. and Env. Health (2012).
[44] *See generally Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts* (Bankr. ECF No. 1237) at 13-16.

C.     **The Subpoenas do not pose an undue burden on Angelos.**

Finally, Angelos's contention that Bestwall's subpoena *duces tecum* imposes an undue burden is without merit. Bestwall carefully drew the subpoena to cover a limited number of relevant, non-privileged documents that would not be burdensome to locate or produce. Bestwall seeks only those documents that are necessary to determine whether Angelos failed to disclose material exposure evidence in the cases of the Selected Plaintiffs: namely, the Trust claims, bankruptcy ballots, and 2019 Statements showing potentially undisclosed exposures, and the documents through which Angelos and the Selected Plaintiffs disclosed their exposures to Bestwall and other defendants in tort litigation. All of these discrete categories of documents should be readily available in Angelos's files for the Selected Plaintiffs, without the need for burdensome or open-ended searches.

To paint a contrary picture, Angelos relies on the Affidavit of Armand J. Volta, Jr., a senior associate of Angelos. Volta tries to create the impression that Bestwall has requested a huge volume of documents that includes vast amounts of electronically stored information and thousands of privileged emails among Angelos lawyers and their clients, including internal memoranda. Tellingly, Volta does not describe any specific request that would require producing these types of documents but makes vague, unsupported statements that responding to unidentified requests would require unreasonable effort and expense. None of the requests imposes any of the burdens described by Volta.

For example, Volta asserts that much of the requested information is privileged work product and that Angelos would be forced to expend considerable effort and expense reviewing information and preparing a privilege log. In fact, as explained above, none of Bestwall's requests can credibly be interpreted to require production of privileged documents or work

product. All of the documents requested were either filed by the Selected Plaintiffs with a Trust or bankruptcy court or provided by Angelos or its clients to an asbestos defendant.

Volta also states that identifying and retrieving documents would require Angelos to locate and interview former lawyers and staff members who may have responsive information and engage an ESI vendor to search the email files and retrieve archived emails of each lawyer and staff member who may have had some role in the cases covered by the Subpoenas. Again, Volta fails to identify which of Bestwall's requests would require these steps and there is no reason to believe any of them would. All of the documents requested should be easily located in and retrieved from the Selected Plaintiffs' case files.

Finally, while Angelos argues that Bestwall could obtain some of the documents it seeks from other sources, the Subpoenas are the only practical means for Bestwall to obtain the discovery it needs with respect to the Selected Plaintiffs. To obtain just the Trust claims, for example, by alternative means, Bestwall would have to serve more than 60 separate subpoenas to individual Trusts in various jurisdictions, and would almost certainly face separate motions to quash with respect to each subpoena. Likewise with the 2019 Statements, Bestwall would have to make a request for access in each of the bankruptcy courts where the exhibits are filed off the public docket, and, assuming such a request is successful, review each of the Statements to determine whether or not the Selected Plaintiffs' names were included. And even after all of that, Bestwall would need to depose Angelos concerning those documents, and any inconsistencies with disclosures in the tort case. Plainly, the burden on Angelos of complying with the Subpoenas is minimal by comparison, and judicial economy favors pursuing discovery through the Subpoenas.

## CONCLUSION

For all these reasons, Bestwall respectfully requests that the Court deny the Motion.[45]

Dated: January 24, 2022

_____/s/_____
Charles N. Curlett, Jr. (Fed Bar #28246)
G. Adam Ruther (Fed Bar #30183)
Rosenberg Martin Greenberg, LLP
25 S. Charles St. 21st Floor
Baltimore, MD 21021
Phone (410) 727-6600
Fax: (410) 727-1115
ccurlett@rosenbergmartin.com
aruther@rosenbergmartin.com

Garland S. Cassada (*pro hac vice*)
Richard C. Worf, Jr. (*pro hac vice pending*)
ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
E-mail: GCassada@robinsonbradshaw.com
E-mail: RWorf@robinsonbradshaw.com

*Attorneys for Bestwall LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing opposition was served upon all counsel entitled to service this 24th day of January, 2022 by electronic filing through this Court's ECF system.

_____/s/_____
G. Adam Ruther

---

[45] Angelos's objection based on the witness fee is now moot—Bestwall has provided the witness fee.

## **INDEX OF EXHIBITS**

A. Revised Order Requiring Filing of Statements Pursuant to Fed. R. Bankr. P. 2019, *In re Pittsburgh Corning Corp.*, No. 00-22876 (Bankr. W.D. Pa. Oct. 22, 2004)

B. Peter Angelos's Verified Statement in Connection with the Representation of Creditors as Required by F.R.B.P. Rule 2019, *In re Owens Corning*, No. 00-3837-JKF (Bankr. D. Del. Feb. 13, 2004)

C. Order Denying in Part and Granting in Part Motion by Official Committee of Asbestos Personal Injury Claimants for Protective Order With Respect to Document Demands Included in Garlock's Subpoenas Duces Tecum to Five Law Firms, Certain Firms' Joinders in Committee's Motion, and Motion to Quash and for Protective Order of Troy D. Chandler and Williams Kherkher Hart Boundas L.L.P., *In re Garlock Sealing Techs. LLC*, No. 10-31607 (Bankr. W.D.N.C. Dec. 12, 2012)

D. Garlock Subpoenas to Law Firms

E. Plaintiff's Fifth Supplemental and/or Amended Answers to Defendants' Joint Interrogatories (Md. Cir. Ct. Balt. City Mar. 17, 2010)

F. Plaintiff's Dep. (Jan. 25, 2007)

G. Defendant Union Carbide's Emergency Motion for Sanctions and/or Related Relief and to Shorten Time for Response (Md. Cir. Ct. Balt. City Jan. 11, 2011)

H. Order Granting in Part and Overruling in Part Objections to Subpoena by Delaware Claims Processing Facility, LLC and Associated Trusts, Establishing Claimant Objection Procedures, and Governing the Confidentiality of Information Provided in Response to the Subpoena, *In re Garlock Sealing Techs.*, No. 10-31607 (Bankr. W.D.N.C. Aug. 7, 2012) (Dkt. 2430)